CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 23 2014

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LISA TRIPICIANO, | ) |
| Plaintiff, | ) Civil Action No. 7:13cv00254 |
| v. | ) MEMORANDUM OPINION |
| ROBERT L. HALE, M.D., *ET AL.*, | ) By: Samuel G. Wilson |
| | ) United States District Judge |
| Defendants. | ) |

This case is before the court pursuant to its diversity jurisdiction, 28 U.S.C. § 1332. Plaintiff Lisa Tripiciano ("Tripiciano") filed suit against Dr. Robert Hale, Dr. Jean Marine, Dr. Fernando Garzon, Dr. Richard Williams, and Dr. Williams' employer University Geriatrics, LLC, alleging medical malpractice in the treatment of her spinal fracture. Each defendant has moved for summary judgment or, in the alternative, to limit the expert testimony to be presented at trial. For the following reasons, the court will deny the defendants' motions.

I.

On November 29, 2005, Tripiciano injured her back in a car accident and was admitted to the Smyth County Community Hospital in Marion, VA. An emergency room physician initially diagnosed Tripiciano with a spinal fracture in the middle of her back and then transferred her care to Dr. Hale. Dr. Hale, who is not a spinal specialist but a general practitioner, referred Tripiciano to Dr. Marine, an orthopedic surgeon. Dr. Hale continued to oversee Tripiciano's treatment at all times other than a brief period from December 2 to December 5 when he was out of town and Dr. Garzon (a physician specializing in internal medicine) assumed his responsibilities.

On November 30, Dr. Marine confirmed that Tripiciano suffered a spinal fracture—specifically, a thoracic vertebral compression fracture with less than ten percent loss of vertebral body height. Dr. Marine ordered an abdominal corset for back support but did not otherwise immobilize Tripiciano in a rigid brace. Instead, Dr. Marine ordered that Tripiciano be slowly "mobilized to tolerance" with physical therapy. (Pl.'s Compl. at ¶ 120) Tripiciano allegedly experienced significant pain in physical therapy, and Dr. Marine ordered a hold on therapy until Tripiciano felt better able to mobilize. On December 3, Dr. Marine discontinued treatment.

Neither Dr. Hale nor Dr. Garzon (the overseeing physicians) allegedly was aware that Dr. Marine discontinued treatment, and on December 7, Dr. Hale restarted physical therapy. According to Tripiciano, she again struggled, and the next day, Dr. Hale transferred her to Pulaski Health & Rehabilitation Center. At Pulaski, Dr. Williams assumed care for Tripiciano. Dr. Williams is an internist who practices in geriatric/rehabilitation medicine. Dr. Williams continued treating Tripiciano with physical therapy.

On December 29, Dr. Williams ordered imaging studies of Tripiciano's spine. The results showed a change to her spinal fracture—a compression fracture with a fifty percent loss of vertebral body height. Dr. Williams allegedly believed that Tripiciano was making progress and continued her therapy. Then, on January 11, Dr. Williams ordered an MRI. The results indicated that Tripiciano's condition had worsened and that her fracture was unstable. Consequently, Dr. Williams transferred Tripiciano to a level one trauma center where she underwent a spinal fusion.

Tripiciano claims that the four treating physicians committed malpractice by failing to immobilize an unstable spinal fracture, failing to order serial images (CT scans or film studies) that would have revealed the instability and deterioration of the fracture, and failing to refer her

to a *spinal* specialist. According to Tripiciano, had the physicians immobilized her fracture (or referred her to a spinal specialist who would have immobilized her), her condition never would have worsened, and she never would have needed fusion surgery. She offers two medical experts in support, Drs. Gary A. Salzman and Deepak Awasthi.

Dr. Salzman is board certified in internal medicine, as well as critical care medicine and pulmonary disease. He is licensed to practice medicine in Missouri and meets the educational and examination requirements to be licensed to practice in Virginia. For the past twenty-eight years, he has examined, diagnosed, and treated patients with spinal fractures. On average, he treats two patients with spinal fractures per year and testified in his deposition that he treated at least one such patient during 2004-2005. (Salzman's Dep. 40:24-42:19, ECF No. 38-3 at 10-11) Dr. Salzman will testify as to the standard of care applicable to Drs. Hale, Garzon, and Williams. He asserts that the standard of care for treating thoracic compression fractures is the same amongst internists and general practitioners. (Salzman's Dep. 44:21-45:6, ECF No. 38-3 at 11-12)

Dr. Awasthi is a board certified neurosurgeon and spine specialist. He is licensed to practice medicine in Louisiana and meets the educational and examination requirements to be licensed to practice in Virginia. Dr. Awasthi has examined, diagnosed, and treated patients with thoracic, lumbar, cervical, or compression burst fractures for the past twenty years and typically treats at least one per month. Dr. Awasthi will testify as to the standard of care applicable to Dr. Marine.[1] According to Dr. Awasthi, all specialists are held to the same standard of care when they choose to treat a spinal fracture. (Awasthi's Dep. 34:23-35:3, ECF No. 38-4 at 9) Dr. Awasthi will also testify that the defendants' alleged negligence caused Tripiciano's spinal

---

[1] Dr. Awasthi also states that, in his opinion, Drs. Hale, Garzon, and Williams deviated from the standard of care. (ECF No. 38-2)

3

fracture to worsen and that had any one of them stabilized her fracture with a rigid brace, more likely than not, she would never have needed surgery. (Awasthi's Dep. 33:3-34:18, ECF No. 38-4 at 9; 54:12-24, ECF No. 38-4 at 14)

II.

All of the defendants have moved for summary judgment. Four defendants argue that under Virginia law, Tripiciano's proffered experts are not qualified to testify as to the requisite standard of care, and all of the defendants argue that Tripiciano's experts fail to establish causation. Therefore, they argue that, on either ground, Tripiciano cannot establish a prima facie case.[2] The court addresses each of their arguments in turn.

A.

Drs. Hale, Garzon, Williams, and University Geriatrics argue that Tripiciano's experts are not qualified to testify as to the requisite standard of care. The court rejects their arguments.

In Virginia, in order to qualify as an expert on the standard of care in a medical malpractice action, a witness must satisfy the requirements of Va. Code § 8.01-581.20, which states in pertinent part:

> A witness shall be qualified to testify as an expert on the standard of care *if he demonstrates expert knowledge* of the standards of the defendant's specialty and of what conduct conforms or fails to conform to those standards **and** if he has had *active clinical practice* in either the defendant's specialty or a related field of

---

[2] To establish a prima facie case of medical malpractice, Tripiciano must establish: (1) the applicable standard of care, (2) that the standard has been violated, and (3) that there is a causal relationship between the violation and the alleged harm. See Fitzgerald v. Manning, 679 F.2d 341, 346 (4th Cir. 1982). In a diversity action, a medical malpractice claim is governed by Virginia law. Peck v. Tegtmeyer, 834 F. Supp. 903, 908-09 (W.D. Va. 1992), aff'd 4 F.3d 985 (4th Cir. 1993). Under Virginia law, Tripiciano must generally establish each of the substantive elements of her claim through the use of expert testimony. See Fitzgerald, 679 F.2d at 347. But see Keegan v. Kaiser Permanente, 2002 WL 921255 (Va. Cir. Ct. 2002) (absence of expert testimony is not enough to justify summary judgment unless the case is outside the common knowledge and experience of the jury).

4

medicine within one year of the date of the alleged act or omission forming the basis of the action.

Id. (emphasis added). The Supreme Court of Virginia has characterized these requisites as the "knowledge requirement" and the "active clinical practice requirement." Wright v. Kaye, 593 S.E.2d 307, 311 (Va. 2004). A witness must satisfy both requirements to testify as an expert on the standard of care. Hinkley v. Koehler, 606 S.E.2d 803, 806 (Va. 2005). A witness may satisfy the knowledge requirement by "evidence that the standard of care, as it relates to the alleged negligent act or treatment [the procedure at issue], is the same for the proffered expert's specialty as it is for the defendant doctor's specialty." Jackson v. Qureshi, 671 S.E.2d 163, 167 (2009) (citation omitted). A witness may satisfy the active clinical practice by "actual performance of the procedures at issue" within the applicable one year time frame. Hinkley, 606 S.E.2d at 807 (quoting Wright, 593 S.E.2d at 313-14). With each requirement, the key inquiry is the "procedure at issue,"—the way in which the defendant is alleged to have deviated from the standard of care (here, the failure to properly diagnose and/or treat a patient with a spinal compression fracture). See Wright, 593 S.E.2d at 313-14. A witness need not practice in the exact same specialty as the defendant, nor have performed a certain number of the procedures in order to qualify. See Jackson, 671 S.E.2d at 167, 169.

In light of these principles, the court finds that both Drs. Salzman and Awasthi are qualified to testify as to the applicable standard of care. Dr. Salzman is certified to practice in internal medicine and testified by deposition that he treated approximately one to two patients with thoracic compression fractures per year. Similarly, Dr. Awasthi is certified to practice in neurosurgery[3] and testified that, in his practice, he diagnosed and treated patients with spinal

---

[3] Because Dr. Salzman and Dr. Awasthi meet the educational and examination requirements to be licensed to practice medicine in Virginia, they are presumed to know the statewide standard of

5

compression fractures every month. Both experts also testified by deposition that they performed the procedures at issue under the same standard of care as the defendants against whom they will testify. Accordingly, the proffered experts have satisfied the requirements of Va. Code § 8.01-581.20.

Dr. Williams and University Geriatrics claim that a different standard of care applies to a physician in a rehabilitation (sub-acute) setting than a physician in a hospital (acute) setting, citing Perdieu v. Blackstone Family Practice Center, Inc., 568 S.E.2d 703 (Va. 2002).[4] However, the defendants misread Perdieu. The key inquiry for the qualification of an expert is not normally the location of the treatment but whether the expert possesses sufficient knowledge and experience with the "procedure(s) at issue." In Perdieu, the fact that the expert worked in a different environment was incident to but not the determinative reason the court excluded the expert. The expert sought to testify about the defendant's failure to devise a care plan and failure to use restraints to prevent the plaintiff from falling and injuring herself. Yet, because of her exclusive work in a hospital setting, she had never actually devised such a plan or made decisions on the use of restraints in a nursing home. Therefore, the Supreme Court of Virginia found that she had not "recently engaged in the actual performance of the procedures at issue," and "the trial court did not abuse its discretion in refusing to qualify the[] proposed expert[]." Id. at 710 (citing Sami v. Varn, S.E.2d 172, 175 (Va. 2000)).

That is not the case here. Tripiciano has proffered Drs. Salzman and Awasthi to testify about procedures with which they have personal experience. They will testify whether it is

---

care for Virginia physicians practicing in their respective specialty. Va. Code § 8.01-581.20 (physician is presumed to know the statewide standard of care if physician "is licensed in some other state of the United States and meets the educational and examination requirements for licensure in Virginia").

[4] Dr. Williams and University Geriatrics have also offered an affidavit by their expert Dr. Michael J. Camardi. (ECF No. 51-1)

standard procedure to order and/or review imaging studies (such as CT scans, MRIs, or film studies) for a spine fracture before implementing a physical therapy regimen, whether immobilization in a rigid brace is necessary, and when consulting a spine specialist would be appropriate. Such procedures are not peculiar to an (acute) hospital setting, and therefore, the court denies the defendants' motion.

B.

Next, the defendants argue that Dr. Awasthi's expert opinions on causation are not admissible. The court, however, rejects their arguments.

In a medical malpractice action, "a plaintiff must establish not only that a defendant violated the applicable standard of care, and therefore was negligent, the plaintiff must also sustain the burden of showing that the negligent acts constituted a proximate cause of the injury." Bryan v. Burt, 486 S.E.2d 536, 539-40 (Va. 1997). Like the other elements of her claim, to prove causation, expert testimony is ordinarily required. Perdieu, 568 S.E.2d at 710. "To be admissible, such medical expert testimony must be rendered to a 'reasonable degree of medical probability.'" Bitar v. Rahman, 630 S.E.2d 319, 323 (Va. 2006) (quoting Pettus v. Gottfried, 606 S.E.2d 819, 825 (Va. 2005)); see also Spruill v. Commonwealth, 271 S.E.2d 419, 421 (Va. 1980) ("[a] medical opinion based on a 'possibility' is irrelevant, purely speculative and, hence, inadmissible").

Dr. Awasthi has met that standard here. Dr. Awasthi testified that, in his opinion, had the defendants ordered a rigid brace for Tripiciano (or referred her to a doctor who could do so), more likely than not, she would not have needed surgery. (Awasthi's Dep. 33:3-34:18, ECF No. 38-4 at 9) ("with a rigid brace . . . more likely than not, she would not have needed surgery"); (54:12-24, ECF No. 38-4 at 14) ("studies have basically shown that by bracing [it] is more likely

than not that they are not going to require surgery"). It is of no consequence that Dr. Awasthi was unable to say exactly when the fracture worsened.[5]

III.

The defendants have also moved, in the alternative, to limit the experts' testimony at trial. They essentially argue that an expert should not be permitted to testify about a standard of care in an area that is different from their specialty.[6] For example, an internist should not be permitted to testify as to the standard of care of a spinal specialist, a neurosurgeon to that of an internist, or an internist to that of a general practitioner. However, an expert needs no particular certification or formal title in order to testify as to the standard of care if he otherwise has the requisite qualifications and expertise. Creekmore, 662 F.3d at 691 ("[T]he Virginia Supreme Court elevates the *substance* of an expert's background, knowledge, and practice over a particular title or form."). The experts may testify as to procedures that overlap and are common to their specialty, such as whether or not to perform imaging studies or to make a referral. Furthermore, they may testify as to what, in their experience, the specialist would likely do following referral. See Griffett v. Ryan, 443 S.E.2d 149, 153 ("obviously the internist would not be able to perform certain procedures because [he] ha[s] not been trained nor qualified to do those procedures, but we internists still might know when they are needed and we still might

---

[5] Defendants argue that Tripiciano must show that her fracture worsened specifically while they were treating her. However, it is not necessary that an injury appear immediately. The injury may appear later and still be attributable to the defendants' actions or inactions on an earlier date. See e.g., Wright v. Eli Lilly & Co., 65 Va. Cir. 485, at *5 n.5 (2004) ("When a medical malpractice claim in Virginia is based on a misdiagnosis or failure to diagnose theory, the 'injury' is the development of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment."); Hollingsworth v. Shenandoah Med. Imaging, Inc., 38 Va. Cir. 324, at *3-4 (1996) (noting that in certain cases the negligent act may not coincide with immediate injury to the plaintiff).

[6] They also argue that this amounts to holding a doctor to the wrong standard of care, but that is not the case because the expert may only testify as to procedures that are common to both specialties.

8

refer these cases to [another specialist] just to do a procedure"). Accordingly, the court will deny the defendants' motions in limine.

IV.

For the reasons stated, the court denies the defendants' motions for summary judgment and motions in limine.

**ENTER**: April 23, 2014.

_____
UNITED STATES DISTRICT JUDGE